**NOT FOR PUBLICATION**

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

MALLINCKRODT LLC, and
MALLINCKRODT INC.,

                    Plaintiffs,

     v.

ACTAVIS LABORATORIES FL, INC.,

                    Defendant.

Action No. 2:15-cv-3800 (KSH)(CLW)

<u>**OPINION & ORDER**</u>

This matter comes before the Court on the motion filed by Defendant Actavis Laboratories FL, Inc. (Actavis) to compel the compliance of third-party Depomed, Inc. (Depomed) with two subpoenas. (Motion, ECF No. 103.)[1] Depomed opposed the motion, ECF No. 104, and Actavis filed a reply, ECF No. 105. The Court declined to hear oral argument pursuant to Rule 78 of the Federal Rules of Civil Procedure and, for the reasons set forth below, grants the motion.

## I.     Overview

In this Hatch-Waxman case, Plaintiffs allege patent infringement by Actavis in connection with Actavis' efforts to market generic versions of a narcotic pain medicine, Xartemis XR. (Am. Compl., ECF No. 37, ¶¶ 1, 10-11.) Prior to FDA approval of Mallinckrodt's NDA, "Mallinckrodt licensed from Depomed patents, a patent application, and know-how[]" and Depomed subsequently was Plaintiff in this suit along with Mallinckrodt. (<u>Id.</u>, ¶¶ 4, 15.) Actavis denies that it infringed on any patents and counterclaims alleging non-infringement and invalidity. (Am. Answer and Counterclaim, ECF No. 39.) In the time since Plaintiff filed the amended complaint,

---

[1] References to the record use page numbers assigned by CM/ECF.

the parties pared down their allegations, ECF No. 66, and agreed to dismiss Depomed from this action, ECF No. 71.

Actavis premises the instant motion on its "reasonabl[e] belie[f] that Depomed[. . .] has information relevant to Actavis's claims and defenses in this case that Actavis cannot otherwise obtain from Plaintiffs or other sources." (Motion, ECF No. 103, at 5.) Actavis emphasizes that "Mallinckrodt did not develop Xartemis XR alone" and that its discovery "requests do not seek any documents or information related to any other case nor do they seek documents or information related to products that are not the subject of this lawsuit." (Id., at 5, 8; Yang Decl., ECF No. 103-2, ¶¶ 3-4.) Actavis seeks the following:

Document requests:

1.  Depomed's internal communications relating to any infringement, validity, or enforceability of the Patents-in-Suit.
2.  Depomed's internal communications relating [to] NDA No. 204031 and any related [investigational new drugs (INDs)].
3. Depomed's internal communications relating to any agreement between Depomed and Mallinckrodt concerning the development of XARTEMIS.
4.  Depomed's internal documents relating to Depomed's participation in the development of XARTEMIS.

Deposition topics:

1. Communications, scope of work, or meetings between Depomed and any other party, including Mallinckrodt, that contributed to, assisted with, or otherwise worked in any way on NDA No. 204031, including but not limited to all communications, scope of work, or meetings between Depomed and Mallinckrodt, concerning NDA No. 204031.
2. Depomed's or Depomed's employees' assistance with the preparation and filing of NDA No. 204031, including any assistance with the preparation and filing of any INDs related to NDA No. 204031.
3. Any agreement, including license agreements, between Depomed and Mallinckrodt related to Depomed's Acuform® drug delivery technology and XARTEMIS.

> 4. Documents or communications regarding Actavis or this litigation, including documents or communications relating to Actavis's ANDA Product.

(Motion, at 7-8.)

In opposition, Depomed contends that "[n]one of Actavis' claims or defenses in its lawsuit with Mallinckrodt concern the Depomed patents[,]" yet Actavis nonetheless "subpoenaed Depomed for documents and testimony regarding ownership information, confidential research and development, privileged communications, trade secrets and sensitive financial business records in connection with five of Depomed's patents." (Opp., ECF No. 104, at 8 (citing Stipulation of Dismissal, ECF No. 81-4).) Depomed maintains that, despite Actavis' subsequent efforts to narrow its requests, Actavis seeks irrelevant information and its "improper subpoenas continue to violate the proportionality requirements of Rule 26 and impose an undue burden on Depomed—a non-party to this litigation—in violation of Rule 45[.]" (Opp., ECF No. 104, at 6-9.)

## II.   Standard

"At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection." Fed. R. Civ. P. 45(d)(2)(B)(i). "[T]he permissible scope of discovery under Rule 45 is the same as under Rule 26(b)." Biotechnology Value Fund, L.P. v. Celera Corp., No. 14-4046, 2014 WL 4272732, at *1 (D.N.J. Aug. 28, 2014) (citations omitted). Thus, as set forth in Rule 26(b)(1):

> Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable.

"Rule 26 is to be construed liberally in favor of disclosure, as relevance is a broader inquiry at the discovery stage than at the trial stage." Cont'l Cas. Co. v. J.M. Huber Corp., No. 13-4298, 2016 WL 3509317, at *2 (D.N.J. June 27, 2016) (citing Tele–Radio Sys. Ltd. v. De Forest Elecs., Inc., 92 F.R.D. 371, 375 (D.N.J. 1981)). "If the subpoenaing party shows the documents sought to be relevant, the resisting non-party must 'explain why discovery should not be permitted.'" Biotechnology Value Fund, 2014 WL 4272732, at *1 (citations omitted). Factors to be considered in assessing the reasonableness of a subpoena include:

> 1) relevance, 2) the need of the party for the documents, 3) the breadth of the document request, 4) the time period covered by it, 5) the particularity with which the documents are described, 6) the burden imposed, and 7) the subpoena recipient's status as a nonparty to the litigation.

Id., at *2 (citations omitted). The resolution of the instant dispute lies within the Court's sound discretion. In re: Riddell Concussion Reduction Litig., No. 13-7585, 2016 WL 4119807, at *2 (D.N.J. July 7, 2016); Forrest v. Corzine, 757 F. Supp.2d 473, 477 (D.N.J. 2010) ("Magistrate Judges are given wide discretion to manage cases and to limit discovery in appropriate circumstances.").

## III.    Analysis

## A.    Relevance

The Court first considers whether the discovery sought is relevant to any of Actavis' claims or defenses. Depomed objects to the relevance of the items sought and first characterizes "Document Requests 2 and 4 and Deposition Topics 1 and 2" as "seek[ing] discovery on **all** of the Orange Book listed patents and seek all the research and development that led to Xartemis, including the five (5) Depomed patents that were dismissed from the suit and were the subject of Actavis' covenant-not-to-sue." (Opp., at 11 (emphasis in original).) Similarly, Depomed contends

that Deposition Topic 4 impermissibly encompasses past and present unrelated litigations between Actavis and Depomed. (Id., at 10.) Depomed likewise argues that Document Request 2 and Deposition Topic 2 "are improper because they seek irrelevant information on *other products* that were developed by Depomed and Covidien, a former parent company of Mallinckrodt[]" and that anything they developed "has nothing to do with the current suit[.]" (Id. (emphasis in original).) Finally, Depomed disputes the relevance of "Document Request 3 and Deposition Topic 3 [because they] seek discovery into Depomed's confidential business and licensing practices for Depomed's patents and intellectual property. (Id., at 12.)

Actavis argues that "Depomed's internal communications regarding the infringement, invalidity, or enforceability of the patents-in-suit are directly relevant to Actavis's claims and defenses" and that it is "reasonable for Actavis to believe that Depomed has in its sole possession, custody, or control internal communications and testimony related to the patents-in-suit and the development of Xartemis XR that had not already been produced by Mallinckrodt." (Motion, at 11.) Actavis also contends that "any responsive information from Depomed bears at least on" conception date, true inventorship, and nonobviousness. (Id., at 12.) And, in reply, Actavis emphasizes that it "has repeatedly clarified, and as its subpoenas state on their faces, the subpoenas are narrowly tailored to internal Depomed documents and information that directly relate to the development of Xartemis or the patents-in-suit—the relevance of which Depomed does not dispute." (Reply, ECF No. 105, at 4-5 (emphasis in original).) On this point, Actavis reiterates that "its requests for production and deposition topics pertain to the development of Xartemis XR or the current patents-in-suit (and non-infringement, invalidity, or unenforceability of those patents) – topics which are directly relevant to [its] claims and defenses in this litigation." (Id., at 6.)

Upon review of the parties' arguments and pleadings, the discovery sought is plainly relevant. As Actavis points out, the desired information bears directly on the outstanding claims and defenses because Depomed played a substantive and public role in the development of Xartemis XR and because this case concerns whether valid patents were infringed upon. Moreover, Actavis' narrowed requests do not apply as broadly as Depomed contends; rather, Actavis' subpoenas are confined to Xartemis XR and the remaining patents-in-suit. Thus, for example, Depomed's disclosures and deposition testimony would not be drawn from unrelated litigations or patents—whether with respect to Actavis, Depomed, or other entities. Similarly, discovery into Depomed's confidential business and licensing practices for its intellectual property would be relevant and permissible only in relation to Xartemis XR and the remaining patents-in-suit.

## B. Proportionality, Undue Burden, and Cost-Shifting

Depomed contends that the discovery should not be permitted because the subpoenas violate the proportionality requirement of Rule 26, impose an undue burden, and warrant cost-shifting if the Court were to order compliance. (Opp., at 13-22.) Depomed argues that "the information sought by Actavis' subpoenas imposes an oppressive time and financial burden on Depomed, which overshadows any likely benefit to Actavis that it would receive from the information[,]" and, by reference to a prior matter, estimates that compliance as to "the extensive email and document searches" would cost about $400,000. (Id., at 14-16; Amin Decl., ECF No. 104-1.)

Actavis maintains that Depomed offers mischaracterization and speculation as to the volume and cost of the discovery sought and asserts that it does not seek duplicative information. (Motion, at 13-16.) Actavis also again represents that it "is cognizant of the burden its subpoenas

may impose upon Depomed, and does not intend to seek any information from Depomed that it can obtain from Mallinckrodt." (Id., at 15.)

Depomed has failed to demonstrate that the discovery sought is disproportionate to the needs of the case or constitutes an undue burden. First, as discussed above, Depomed overstates the breadth of Actavis' requests and Actavis has repeatedly described how it has revised its requests to pertain only to Xartemis XR and the remaining patents-in-suit for the time period associated with the product's development. Actavis has likewise represented that it only seeks items that it cannot obtain from Mallinckrodt. Thus, even though there "is no general rule that plaintiffs cannot seek nonparty discovery of documents likely to be in [a party's] possession[,]" it is apparent that Actavis nonetheless narrowed its requests to minimize burden. See W. Penn Allegheny Health Sys., Inc. v. UPMC, No. 09-00480, 2013 WL 12134101, at *3 (W.D. Pa. Feb. 15, 2013) (quoting Viacom Int'l, Inc. v. YouTube, Inc., 2008 WL 3876142 at *3 (N.D. Cal. Aug. 18, 2008); Visto Corp. v. Smartner Info. Sys., Ltd., 2007 WL 218771, at *3 (N.D. Cal. Jan. 29, 2007)). Indeed, some overlap between the disclosures of Mallinckrodt and Depomed would not equate to disproportionality or undue burden because Actavis' requests may yield "different versions of documents, additional material, or perhaps, significant omissions[.]" See id.; Biotechnology Value Fund, 2014 WL 4272732, at 3-4 (granting motion to compel compliance with subpoena where proponent had "considerably narrowed the initial requests," non-party's documents "could serve as important data points" to evaluating "a central issue in the underlying case," and confidentiality concerns were alleviated by the DCO). And, while Depomed's non-party status warrants keen sensitivity and reluctance as to the imposition of burden, see Opp., at 14-15 (collecting cases), it must be emphasized that Depomed is a former party uniquely positioned to provide relevant discovery and has a financial stake in this litigation—however bearish the market

for Xartemis XR may be at the moment. On balance, therefore, Depomed has failed to meet its burden and the facts presented warrant granting the motion to compel compliance with the subpoena. And, as a corollary, the facts here are distinguishable from cases in which such motions were denied. See e.g., In re Lazaridis, 865 F. Supp. 2d 521, 528 (D.N.J. 2011) (finding undue burden after weighing cost and burden "against the lack of a showing of actual need or relevance of the information sought"); Haworth Inc. v. Herman Miller, Inc., 998 F.2d 975, 976-78 (Fed. Cir. 1993) (upholding denial of motion to compel where documents at issue could be obtained through party and where movant "spun a convoluted scenario hypothesizing the existence" of a product created by the nonparty that the parties agreed did not infringe).

Finally, an order to compel production must protect a non-party "from significant expense resulting from compliance." Fed. R. Civ. P. 45(d)(2)(A)(ii). The following may be considered to determine whether to shift the cost of production: "1) whether the non-party has an interest in the outcome of the case; 2) whether the non-party can more readily bear its cost than the requesting party; and 3) whether the litigation is of public importance." Maximum Human Performance LLC v. Sigma-Tau HealthScience LLC, No. 12-6526, 2013 WL 4537790, at *4 (D.N.J. Aug. 27, 2013).

In support of its request for cost-shifting, Depomed minimizes its interest in this matter by reference to the weak market for Xartemis and asserts that Actavis' annual revenue dwarfs its own. (Opp., at 19-22.) Actavis counters that, current market notwithstanding, Depomed has received ten million dollars in milestone payments from Mallinckrodt, "continues to receive licensing revenue on every sale of Xartemis[,]" and "should have anticipated subsequent Hatch-Waxman litigation based on subsequent [ANDA] filers." (Reply, at 9-10.) Actavis also stresses Depomed's "excessive representations of the time and cost it estimates it will incur to comply with the subpoenas[.]" (Id., at 10.)

First, there is no discernible public importance. Next, Xartemis has a clear pecuniary interest in this action by virtue of its past and future earnings. Furthermore, based on the meager evidence presented on this point in the form of, e.g., expected earnings, pain relief market saturation, or competitors' performance, it cannot be concluded that Depomed's interest is "limited" and "marginal," Opp., at 21, and that market conditions will not change. Next, accepting that Depomed is considerably smaller than Actavis, it is nonetheless difficult to assess which party can readily bear the cost because both entities apparently have resources to develop products and conduct patent litigation, Depomed did not provide precise information on its inability to incur such a cost, and there is no specific evidence concerning the overall vitality of each entity. A mere disparity in size between a party and non-party should not suffice to impose the cost on the ostensibly larger of the two. Moreover, Actavis highlights Depomed's seemingly inconsistent estimates with respect to the burdens of compliance, Reply at 11, n.4, and, in any event, Depomed's estimate does not present a particularized assessment of its anticipated costs. That is, aside from hours, overall cost, the number of custodians, and reference to a "prior matter" with "similar searches," there is no description or detail, for example, regarding staffing, individual tasks, durations thereof, hourly rates, or how the prior matter is an appropriate rubric—either for Depomed or any vendor it utilizes. Without more, the Court is ill-positioned to assess the significance of the costs and then shift those costs to Actavis. See Maximum Human Performance, 2013 WL 4537790, at *4 (granting motion to compel where non-party provided no financial information to assess value of business relationship with party or its ability to pay). Accordingly, Depomed shall bear its costs.

**IV.     Conclusion**

In light of the foregoing, the Court grants Actavis' motion to compel Depomed's compliance with two subpoenas.


**ACCORDINGLY, IT IS** on this 10th day of February, 2017,

**ORDERED** that Actavis' motion to compel is granted; and

**ORDERED** that the Clerk shall terminate ECF No. 103; and

**ORDERED** that the Court will hold a teleconference, to be initiated by Plaintiffs, on February 17, 2017 at 12:30 PM. Depomed also shall appear for the teleconference, and Actavis shall transmit this Order to Depomed as soon as practicable.


*s/Cathy L. Waldor*
**CATHY L. WALDOR**
**United States Magistrate Judge**